# Isaiah *v.* The State.

*Carrying Concealed Weapons.*

(Decided June 30, 1911. Rehearing denied April 4, 1912.
58 South. 53.)

*Weapons; Statutory Provision.*—Sections 2 and 5, Acts 1909, p. 258, prohibits a person from carrying an unconcealed weapon on the premises of another, and does not denounce his carrying on the highway or elsewhere other than on such premises, and when considered in connection with section 4, the statute merely prohibits the carrying of arms for offensive purposes, and does not deprive a person of the right to bear arms in defense of himself or the state, and hence, is not violative of sec. 26 of the Bill of Rights.

Question certified from Court of Appeals.

Jacob Isaiah was convicted of carrying a concealed pistol, and appealed to the Court of Appeals, which certified the constitutional question involved to this court. The following opinion is rendered in response to an application for rehearing in the Supreme Court upon the ruling of said court on the question so submitted. For the decision of the Court of Appeals, see 3 Ala. App. 138, 58 South. 57.

HILL, HILL, WHITING & STERN, EVANS & PARRISH, and MARK D. BRAINARD, for appellant. Sec. 2 of the act under which this indictment is drawn is unconstitutional.—Amendment 2, Constitution U. S.; *U. S. v. Cruikshanks*, 92 U. S. 542; *Presser v. Ill.*, 116 U. S. 252; *Speers v. State*, 123 U. S. 131; Sec. 26, Constitution 1901. The carrying of concealed weapons may be prohibited. In other words, the manner of carrying may be regulated, but the carrying cannot be prohibited.— *Reed v. State*, 1 Ala. 616; *Owen v. State*, 31 Ala. 387; *Dunston v. State*, 124 Ala. 89. But the carrying cannot be prohibited.—*English v. State*, 35 Tex. 472;

*Andrews v. State,* 3 Heisk. 165; *Dobbs v. State,* 39 Ark. 363; *State v. Burgoyne,* 7 Lea. 173; *Collier v. State,* 68 Ala. 499.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State.

ANDERSON, J.—Section 2 of Acts Special Session 1909, p. 258, says: "It shall be unlawful for any person to carry a pistol about his person on premises not his own or under his control," etc. Section 5 provides that the indictment is sufficient if it charges that the defendant carried a pistol "on premises not his own or under his control." This is a criminal statute, and must be strictly construed, and, so construed, it means that a person is prohibited from carrying an unconcealed pistol only upon "premises" not his own or under his control; that is, he may carry it anywhere except upon the premises of another. It is therefore a mere regulation as to carrying an unconcealed pistol, and is intended to prevent one person from going armed with a pistol upon the premises of another, and does not prohibit the carrying of same, if not concealed, upon the highway or elsewhere other than upon the premises of another.

Said section 2 is not violative of section 26 of the Bill of Rights, as it merely prevents the carrying of arms for offensive purposes, and does not deprive a person of the right to bear arms in defense of himself or the state. Moreover, section 4 of the act authorizes the defendant to give in evidence the fact that he had good reason to apprehend an attack, either in mitigation of the fine or in justification of the offense.

DOWDELL, C. J., and SIMPSON, SAYRE, and SOMERVILLE, JJ., concur in the opinion. MCCLELLAN and MAYFIELD, JJ., concur in the conclusion.

McCLELLAN, J.—The response the court should, in my opinion, make to the inquiry submitted by the Court of Appeals is set forth in the following opinion, delivered for the court on original consideration:

The certification of the Court of Appeals submits this question: "Is the provision of section 2 of the act to regulate the right to carry a pistol in this state, approved August 26, 1909 (General and Local Acts Special Session 1909, p. 258), violative of section 26 of the Constitution of the state of Alabama. 'That every citizen has a right to bear arms in defense of himself and the state'?" The first and second sections of that act read:

"Section 1. Be it enacted by the Legislature of Alabama, that it shall be unlawful for any person to carry a pistol concealed about his person.

"Sec. 2. It shall be unlawful for any person to carry a pistol about his person on premises not his own or under his control, provided this section shall not apply to any sheriff or his deputy or police officer of an incorporated town or city in the lawful discharge of the duties of his office or United States marshal or their deputies, rural free delivery mail carriers in the discharge of their duties as such or bonded constable in the discharge of their duties as such."

Section 4 of the act, which has reference to the offenses created by sections 1 and 2, provides:

"Sec. 4. The defendant may give evidence that at the time of carrying the pistol he had good reason to apprehend an attack which the jury may consider in mitigation of the fine or jurisdiction of the offense."

Section 1 prohibits the carrying of a pistol *concealed,* about the person, at any time and everywhere. With exceptions in favor of the officials designated therein, section 2 restricts the carrying "of a pistol about his

person on premises not his own or under his control."
The restriction of this section 4 is territorial only. It
is not absolute, as is evident. Indeed, where there is
"good reason to apprehend an attack" at the time of car-
rying the pistol, the enactment renders that fact admis-
sible in evidence, and this "the jury may consider in mit-
igation of the fine or jurisdiction of the offense." The
restriction is of the carrying of one instrument one
weapon, namely, the pistol. It is not, of course, directed
against any other weapon. Hence any argument or
contention predicated upon a general prohibition
against the bearing of *all* arms is inapt on the consider-
ation of the inquiry submitted by our Brothers of the
Court of Appeals. Nor is there just force or applica-
tion in the suggestion of counsel for appellant that the
approval of the constitutionality of section 2, thereby
justifying the restriction of the right to carry a pistol
to one's own premises or to premises under one's con-
trol, may sanction, if not invite, legislative restrictions,
periodically created, whereby *all* arms might be forbid-
den to be borne in this state. To this suggestion we
adopt the response, to a like suggestion, of Justice Wal-
ker in *Dorman v. State*, 34 Ala. 216, 245, when he said:
"We do not perceive the force of the argument, that, if
this act is sustained as constitutional, the General As-
sembly may, at different times and under various pre-
tenses, pass similar laws, until the entire area of the
state is covered by enactments prohibiting the sale of
this species of property. If such general prohibition
would be unconstitutional, we are bound to presume
that the Legislature will never attempt it. But it is
sufficient to say that the General Assembly has not, in
fact, done what is suggested it may hereafter do. We
are here to decide actual, not possible cases. All that
we can or ought to do is to determine whether this par-

ticular law is constitutional. We are certainly not pre-
pared to hold that a Legislature shall not exercise a
constitutional power to any extent, because some suc-
ceeding General Assembly may exercise it beyond the
proper limit. That would be to say that a lawful power
must not be used at all, because it may be abused."

Section 26 of the organic law provides: "That every
citizen has a right to bear arms in defense of himself
and the state." This clause of the Bill of Rights has
had place in each of the several Constitutions of this
state, from its admission in the Union. By the second
amendment to the Constitution of the United States, it
was added to that instrument that: "A well-regulated
militia being necessary to the security of a free state,
the right of the people to keep and bear arms shall not
be infringed." This amendment, however, has been rul-
ed to be a restriction operative only upon the federal
power.—*Miller v. Texas*, 153 U. S. 535, 14 Sup. Ct. 874,
38 L. Ed. 812. The clauses quoted from our Constitu-
tions, from the beginning, have been ascribed, in sugges-
tion of incorporation therein, to the Bill of Rights for-
mulated by the Parliament, in 1688, as conditions to
the recognition and installation of William and Mary
as the reigning sovereigns, after the flight of James II,
whose assumptions of authority and power were deemed
violative and subversive of the liberties of the people
of England, chief among which subjects of abuses was
that of the Protestant religion.—9 St. at Large, 1 Wil-
liam and Mary, p. 67 et seq. To circumscribe the power
of the sovereign, and to render more secure from inva-
sion the rights involved, consistent with the favor with
which William and Mary viewed the rights of at least
a class of their subjects, the Bill of Rights subscribed by
them contained, among other declarations, this: "That
the subjects which are Protestants may bear arms for

their defense, suitable to their conditions, and as allowed by law." This feature of the declaration of rights was a response to the unwarranted action, imputed to James II, of "causing several good subjects, being Protestants, to be disarmed at the same time when Papists were both armed and employed, contrary to law," and of levying money, raising a standing army. and quartering the same in violation of law. It thus appears that the right to bear arms inhered in the people, though qualified, in instances, to religious classes favored by the sovereign. From the particular clause of the Bill of Rights subscribed by William and Mary, it appears to have been expressely provided that the right to bear arms should be subject to legislative treatment, necessarily implying its regulation, if not more.

Our organic law declares the right of .the citizen to bear arms in defense of self and the state, but omits any express reference of the subject to legislative action. But this omission is not important in any sense, because, with us, the Constitution is deemed an instrument of limitation of power, not a grant thereof. So. viewed, .it was entirely consistent for this court, in *State v. Reid*, 1 Ala. 612, 35 Am. Dec. 44, to hold that the affirmance in the Constitution of the right to bear arms was a limitation on legislative power to deny that right, but that, in phraseology and in the evil intended to be remedied, the clause declaring the right did not, expressly or impliedly, inhibit the Legislature from the regulation of the exercise of the right—in that instance, the *manner* of carrying certain weapons. In *Reid's Case* it was said: "The question recurs: Does the act, 'to suppress the evil practice of carrying weapons secretly,' trench upon the constitutional rights of the citizen? We think not. The Constitution, in declaring that 'every citizen has the right to bear arms in defense of

himself and the state,' has neither expressly nor by implication denied to the Legislature the right to enact laws in regard to the manner in which arms shall be borne. The right guaranteed to the citizen is not to bear arms upon all occasions and in all places, but merely 'in defense of himself and the state.' The terms in which this provision is phrased seem to us necessarily to leave with the Legislature the authority to adopt such regulations of police as may be dictated by the safety of the people and the advancement of public morals. The statute of 1 Wm. & Mary, while it declares the right of the subject, it refers to Parliament to determine *what arms shall be borne and how* (italics supplied); while our Constitution, being silent as to the action of the Legisalture, does not divest it of a power over the subject, which pertained to it independent of an express grant. We do not desire to be understood as maintaining that, in regulating the manner of bearing arms, the authority of the Legislature has no other limit than its own discretion. A statute which, under the pretense of regulating, amounts to a destruction of the right, or which requires arms to be so borne as to render them wholly useless for the purposes of defense, would be clearly unconstitutional. But a law which is intended merely to promote personal security, and to put down lawless aggression and violence, and to that end inhibits the bearing of certain weapons in such a manner as is calculated to exert an unhappy influence upon the moral feelings of the bearer, by making him less regardful of the personal security of others, does not come in collision with the Constitution." ]

Since the pronouncement in *Reid's Case,* the clause under consideration has been reordained, and comes now to our hands for interpretation, as affecting the validity of the second section of the act approved

August 26, 1909, prohibiting the carrying of a pistol off his premises, or those under his control, impressed with the construction put upon the clause by this court in *Reid's Case*. The Legislature thus having the right to *regulate* the exercise of the right to bear arms in defense of self and the state, the inquiry is: Is section 2 of the act in hand a regulation merely, or is it a prohibition of the right stated? Such is conceded by appellant's counsel to be the real question. In *Reid's Case* the motive for a *regulation* of the right to bear arms is said to prevail in the "safety of the people and the advancement of the public morals." Given the right to regulate, implying as of course the denial of the prerogative to destroy, even in the guise of *regulation*, the declared right, necessarily the Legislature possesses the power and the province to determine what enactments will conserve, in this respect, the safety and morals of the people of the state; the sole province of the courts being to decide, when so invited, whether the action taken in assumed *regulation* of the constitutional right to bear arms is in fact an unwarranted invasion of the right to the extent that it is impaired, not merely regulated.

In this instance the Legislature has determined, presumably upon the idea of conservation of the public interest and welfare, that to carry a pistol off one's premises, or off those under one's control, is inimical to such interest and welfare, and so prohibits it. To justify this court in pronouncing this phase of the act violative of the constitutional right to bear arms, the obligation is on its assailant to show, to requisite certainty, that the prohibition is not a *regulation,* but an infraction of the broader right to bear arms. The "safety of the people and the advancement of public morals" is certainly a latitudinous qualification for the exercise of the right

[Isaiah v. The State.]

to regulate a constitutional right; but it prevails, as before stated, to influence the interpretation of section 26.—*Reid's Case, supra*. Had it not been so intended of approval, as reflecting the purpose and effect of section 26, later Constitutions would have written in the instrument in denial of it.

Within the general inquiry, which appellant's counsel concede is whether the restriction of section 2 is a regulation or a prohibition of the constitutional right to bear arms, is the specific one, to decide which determines the constitutional validity of section 2, viz.: Is the areal restriction of the right to carry a pistol, to premises owned and controlled by a person, a *prohibition* of the exercise of the constitutional right to bear arms, or, conversely, is it a *regulation* of that right?

We have been referred to numerous adjudications in other jurisdictions touching, or determinative of, phases of the concrete question in hand. Many of these may be found in the notes to *Salina v. Blaksley*, reported in 115 Am. St. Rep. 196, 199, and in 3 L. R. A. (N. S.) 168-170, and in the notes to *In re Brickey*, 1 Ann. Cas. 55, and in *Ex parte Thomas*, 17 Ann. Cas. 566-571. There is wide and fundamental divergence of opinion upon the scope and effect of constitutional provisions declaring the right involved. We have profited by their general discussion, and have formed our response to the concrete question last stated in the light of their learning, and in obedience to the effect, in constitutional intent, of the decision of this court in *Reid's Case, supra*, after which section 26 has been several times reordained.

[In order to hold that section 2 is violative of the constitutional right *to bear arms* it must, of necessity, be affirmed that there is no legislative power to prescribe *places* within the state whereat arms may *not* be borne. Yet it would seem to be beyond any semblance of doubt

that that body might validly forbid the bearing of arms of any and every description into the presence of courts of justice (*Hill v. Ga.*, 53 Ga. 472), or to churches or other public assemblages (*Andrews v. State*, 3 Heisk. [Tenn.] 165, 8 Am. Rep. 8, 15). Upon like principle of legislative regulation of the right to bear arms, a statute of the state of Ohio, forbidding a "tramp" to carry a firearm or other dangerous weapon, was pronounced a valid regulation.—*State v. Hogan*, 63 Ohio St. 202, 58 N. E. 572, 52 L. R. A. 863, 81 Am. St. Rep. 626. Indeed, it was there pointed out that, at common law, it was an offense to go "armed with unusual and dangerous weapons to the terror of the people." See *State v. Huntly*, 25 N. C. 418, 40 Am. Dec. 416. In each of the three instances mentioned, the legislative restriction, or the common-law restraint, qualified the general right to bear arms, and still did not impair the right, but regulated its enjoyment. If the general right to bear arms may be qualified—regulated—in these respects, can it be soundly declared that the restriction of the right of one to carry a pistol about his person, to premises owned or controlled by him, is an infraction of the constitutional right to bear arms?

In *Reid's Case, supra*, it was said that "the right guaranteed to the citizen is not to bear arms on all occasions and in all places, but merely in defense of himself and the state." The only objective of the right guaranteed is protection—defense. To impair it the enactment assailed must qualify, beyond proper regulations of police, the ability to avail of the objective of the constitutional guaranty. The Legislature, to which is committed the establishment of regulations of police, are authorized to control the exercise of the constitutional right with such regulations "as may be dictated by the safety of the people and the advancement of public

morals." These wholesome desires of a well-ordered civilization have, as experience has proven, no more certain or persistent obstacle than that afforded by the readily worn pistol. Such a practice has brought, after trial, the conviction that it is among the chief sources of an homicidal record that all but appalls. Consistent with the common knowledge on the subject, it cannot be doubted that the motive for the enactment of section 2 is traceable to the legislative intent to conserve the safety of the people and to advance the public morals by averting as far as may be the carrying about the person, away from the places described, of an instrument so associated with the destruction of the public peace and welfare. The inhibition leaves the weapon to be carried, openly, upon the places prescribed. He is thereby forbidden to carry the weapon, even openly, upon the highways, at public assemblages, or elsewhere than as is prescribed. That the disapperance of the pistol from such places as we have indicated would tend to the safety of the people, to the welfare of all, and to the advancement of the public morals, cannot be gainsaid.

The Legislature, to whom the Constitution commits the right to *regulate,* in the interest of the public weal, the enjoyment of the major right to bear arms *in defense,* has expressed its judgment in section 2 by the restriction of the carrying of one weapon to a limited, yet intimately associated with the citizen, area, namely, his own, or controlled, premises. There the weapon is available to his defense. Elsewhere, every other weapon of defense may be openly borne. To deny the validity of section 2 would, without doubt, restrict the legislative right to regulate, as broadly declared in *Reid's Case,* to the *manner* only of bearing arms; and this would clothe the constitutional right to bear arms with an effect to deny to legislative function the power to determine,

without destroying the major right, what are *arms* proper to be borne, within the constitutional guaranty, or to decide, in the interest of the public safety and welfare and as a *regulation,* at what *places* arms of a defined character should not be borne. This we cannot affirm, in the light of the pertinent statements, before quoted from *Reid's Case.* Accordingly, we are constrained to hold that section 2 is not violative of section 26 of the Constitution, and, hence, to answer the submitted question in the negative.

Counsel for appellant propound a number of supposititious cases, with the view to the demonstration of the invalidity of section 2. Some of them lead only to the administrative phases of the law, and not to its unconstitutionality. It is strongly urged that section 2 would prevent the carrying, by an owner, of a pistol from his home or premises to his place of business *across,* therefrom, a highway. The suggestion this illustration makes is not referable to the right *to bear arms,* but to the restriction upon the enjoyment of the property right the owner has in the *pistol* he would carry from his home to his place of business—a manifestly different matter from the guaranty of section 26. Property rights are held subject to the proper exercise, by the state, of the police power. That section 2 of this act unwarrantably invades, or would invade, a property right, or the enjoyment of property, is not urged; and, if so it were, it would be clearly unsound and unavailing to avoid section 2 of this act.