Appellant was charged by complaint with the offense of driving "while intoxicated or under the influence of a narcotic drug or other drugs" within the corporate limits or police jurisdiction of the City of Mountain Brook. He was represented by counsel of his choice and interposed a plea of not guilty. The jury found appellant guilty as charged and assessed a fine against him of $100.00. The trial court adjudged appellant guilty as charged in the complaint and, in accordance with the verdict of the jury, imposed a fine against him of $100.00 and the court costs.
Don Isaacs, a police officer of the City of Mountain Brook, testified that, at about 8:40 p.m., on October 9, 1977, he observed appellant driving a motor vehicle in an erratic manner within the City limits of Mountain Brook. Officer Isaacs was in plain clothes and patrolling in an unmarked car. He radioed for a uniformed officer in a marked car to intercept appellant's car and gave the location. Isaacs continued to follow appellant and saw his car swerve off the side of the street and then make a wide left turn crossing over into the oncoming traffic lane. According to Isaacs appellant was driving from one side of the street to the other and kept crossing the center lane and he was afraid appellant was going to wreck his car and hurt someone as well as himself. He decided to stop appellant instead of waiting for the uniformed officer to arrive. He turned on his blue light and siren and finally stopped appellant.
Isaacs went to appellant's car and noticed a strong odor of alcohol on appellant's breath and his face was flushed. Appellant had difficulty in getting out of his car and could hardly walk. His speech was badly slurred.
When Officer Gene Holtage arrived in the marked patrol car appellant was removed from his car and put in the patrol car with Officer Holtage who transported *Page 485 
him to the station house. Isaacs followed them to headquarters, and was present when Officer Holtage, who was certified by the State Board of Health as qualified to operate the photo-electric intoximeter machine, attempted to administer the test to appellant. Appellant made three attempts to blow into the machine but was unable to exhale a sufficient amount of air to obtain a meter reading.
Officer Isaacs testified that he had seen many people who were intoxicated and that based upon his experience and his observation of appellant it was his opinion that appellant was intoxicated on the night he was arrested. Appellant was placed in jail and charged with driving an automobile while intoxicated.
Officer Gene Holtage gave appellant the Miranda rights and warnings and explained the requirements of taking the PEI test. He set up the machine and appellant made three unsuccessful attempts to blow into the tube which inflates the bag. He further testified that appellant had a strong odor of alcohol on his breath. His speech was very slurred and slow, his face was very flushed and his eyes were glassy looking. He stated appellant was unsteady on his feet and he had to assist him in walking up the steps and into the police station. While walking down the hall inside the station appellant fell against the side of the wall and had to be helped. Based upon his observation of appellant and his actions he expressed the opinion that appellant was very intoxicated.
Appellant testified that, on Sunday, October 9, 1977, he remained at home until about 6:00 p.m. when he drove to the Vestavia Country Club where he was a member. He said prior to that time he had nothing alcoholic to drink. He stated that upon arriving at the Club he had two beers over ice and went into the steam room where he stayed approximately twenty-five minutes. He testified that he had two more beers after leaving the steam room.
Appellant stated that he had a prescription for Valium issued to him by his personal physician and that about 45 minutes prior to leaving the Club he took one Valium tablet. He left the Club around 8:15 p.m. and did not feel at all unusual, nor did he experience any difficulty in talking or walking. He said when he was stopped by the officer he had the feeling that something was happening to him, that something was wrong, but he did not know what it was. He did recall being carried to the police station and attempting to blow into the photo-electric intoximeter and his inability to do so.
Dr. Ralph L. Tieszen, Sr., testified on behalf of appellant and stated that he is a Medical Doctor, licensed by the State of Alabama, with a specialty in internal medicine. He said that Valium is not a narcotic drug and is not habit forming; that Valium is a tranquilizer and muscle relaxant. He did say that Valium is a controlled substance. He stated that when Valium and alcohol are combined in the body the alcohol gives an increased effect to the Valium. The effects which could be produced by such a combination include slurred speech, difficulty in walking, glassy eyes, and inability to breathe properly. He said appellant's inability to blow into the intoximeter on the night of his arrest was consistent with his ingestion of beer and Valium earlier that evening.
Dr. Tieszen stated that while one can of beer combined with Valium could possibly produce symptoms similar to appellant's, and three cans of beer would probably produce those symptoms, certainly four cans of beer would do so.
James A. Green, Jr., testified that he talked to appellant at about 6:30 p.m. on October 7, 1977, at the Vestavia Country Club and he did not appear to be abnormal in any way.
Donald Cannon stated that he spoke with appellant the same night as both were leaving the Club and walking to the parking lot. The time was between 8:15 and 8:30. He did not observe anything abnormal in appellant's looks, speech or walk.
Appellant's major insistence of error on this appeal is that Ordinance No. 640 of *Page 486 
the City of Mountain Brook, under which he was prosecuted, is unconstitutional in that it is inconsistent with the State statute prohibiting driving a motor vehicle while intoxicated, Section 32-5-170 Code of 1975.
Section 32-5-170, Code of 1975, provides in pertinent part as follows:
 "It shall be unlawful for any person . . while under the influence of narcotic drugs, or any person who is intoxicated, to drive a motor vehicle upon any highway of this state . . ."
Section 12-14 of the Code of the City of Mountain Brook, Alabama, as amended, provides in pertinent part as follows:
 "(a) It shall be unlawful for any person, who is an habitual user of narcotic drugs or any person who is intoxicated to drive a motor vehicle upon any street of this city."
* * * * * *
 "(9) It shall be unlawful for any person who is under the influence of any narcotic drug or any other drug to a degree which renders him incapable of safely driving or operating a vehicle, to drive or operate a vehicle within the City or the police jurisdiction thereof."
Appellant insists that the Mountain Brook Ordinance is inconsistent with Section 32-5-170, Code of 1975, supra, because it enlarges the prohibition against a person driving a motor vehicle while under the influence of narcotic drugs to include driving while under the influence of "any other drug . . . which renders him incapable of safely driving . . ."
Section 11-45-1, Code of 1975, reads as follows:
 "Municipal corporations may from time to time adopt ordinances and resolutions not inconsistent with the laws of the state to carry into effect or discharge the powers and duties conferred by the applicable provisions of this title and any other applicable provisions of law and to provide for the safety, preserve the health, promote the prosperity and improve the morals, order, comfort and convenience of the inhabitants of the municipality, and may enforce obedience to such ordinances. (Code 1907, § 1251; Code 1923, § 1992; Code 1940, T. 37, § 455; Acts 1971, No. 2279, p. 3670.)" (Emphasis supplied.)
The restriction that a municipal ordinance shall not be "inconsistent with the laws of the state" is in recognition of Section 89 of the Alabama Constitution of 1901 which provides as follows:
 "The legislature shall not have power to authorize any municipal corporation to pass any laws inconsistent with the general laws of this state."
See Ott v. Moody, 283 Ala. 288, 216 So.2d 177.
It has been held that whether a local ordinance is inconsistent with the laws of the State is to be determined by whether the local law prohibits anything which the State law permits. Atkins v. City of Tarrant City, Ala.Cr.App.,369 So.2d 322; Ligon v. City of Gadsden, 21 Ala. App. 312, 107 So. 733.
Appellant states, in brief: "We find no state statute making it unlawful for a person to drive an automobile while under the influence of drugs. Section 32-55-170 does make it unlawful for a person to drive while under the influence of narcotic drugs . . . The prohibition (found in the Mountain Brook ordinance) against driving an automobile while under the influence ofdrugs prohibits what the state law permits because there is no such prohibiting state law."
It seems clear to us, however, that Section 32-5-170, Code 1975, does not permit a person to drive while under the influence of drugs which render him "incapable of safely driving or operating a vehicle." The State statute prohibits a person from driving while under the influence of "narcotic drugs or while intoxicated."
The word "narcotic" has been defined as:
 1. "A drug . . . that in moderate doses allays sensibility, relieves pain and produces profound sleep but that in poisonous doses produces stupor, coma or convulsions." *Page 487 
2. "Something that soothes, relieves or dulls."
 Webster's Third International Dictionary 1503 (unabridged 1971).
 "An agent that produces insensibility or stupor." Dorland's Illustrated Medical Dictionary 1018 (25th Ed. 1974)
 "A drug which, used in moderate doses, produces stupor, insensibility, or sound sleep." Stedman's Medical Dictionary, 827 (3rd Ed. 1972)
 "Intoxication" has been defined as: "the abnormal state induced by a chemical agent." "Intoxicate" means, "to excite or stupefy by alcoholic drinks or narcotic especially to the point where physical and mental control is markedly diminished." Webster's Third International Dictionary 1185 (unabridged 1971)
 "A disturbance of mental or physical capacities resulting from the introduction of substances into the body." American Law Institute Model Penal Code Section 2.08 (5)(a) (1962).
In Clowney v. State, Fla., 1958, 102 So.2d 619, the Supreme Court of Florida held that, "a person is intoxicated when he is under the influence of intoxicants to such an extent as to deprive him of full possession of his normal faculties. Intoxication is generally associated with imbibing vinous, malt or spirituous liquors. But with the advent of the pervasive illegal traffic in drugs which our society is experiencing, the definition of intoxication has been extended generally to their use also." Trivette v. State, Fla., 244 So.2d 173. An excellent annotation is found in 17 A.L.R.3rd 815.
The clear purpose of Section 32-5-170, Code 1975, is to prohibit the operation of motor vehicles by those whose faculties are so impaired that they present a danger to the safety of the public as well as to themselves. McMurry v.State, 28 Ala. App. 253, 184 So. 42; Haywood v. State, 280 Ala. 171, 190 So.2d 728.
One who operates a motor vehicle after ingesting a drug "which renders him incapable of safely driving or operating a vehicle" has violated State law. The Mountain Brook ordinance challenged by appellant is merely elaborative of, and not in conflict with, State law.
Appellant next contends that the State's evidence failed to establish a prima facie case of the offense charged and the trial court erred in overruling his motions to exclude and for a directed verdict. This contention is without merit.
The police officers testified that appellant's car was weaving in traffic; they smelled a strong odor of alcohol on appellant's breath; that appellant's speech was slurred; that he had great difficulty in trying to stand up and walk, and that he could not blow into the intoximeter after three attempts. Appellant testified that he had consumed four beers and had taken a Valium tablet prior to driving his automobile.
Substantial evidence of every element of the charged offense was presented by the City and, therefore, the trial court correctly overruled appellant's motion. Morton v. State, Ala.Cr.App., 338 So.2d 423, certiorari denied, Ala.,338 So.2d 428; Mainor v. State, Ala.Cr.App., 348 So.2d 1083, certiorari denied, Ala., 348 So.2d 1091.
Finally, appellant maintains the trial court committed reversible error in overruling his motion for a mistrial after the following occurred on cross-examination:
 "Now, Mr. Leu, you know what a photo-electric intoximeter is, don't you?
"A. Yes.
 "Q. On October 7th, 1977, you knew what a photo-electric intoximeter was, didn't you?
"A. Yes, sir.
"Q. You knew that the purpose of it was, didn't you?
"A. Yes, sir.
"Q. And you blew in it, didn't you?
"A. I attempted to blow it up.
 "Q. Were you in the same condition on October 9th, 1977, that you were in on October 4th, 1976, was your physical condition about the same?
 "MR. TUCKER: Object, Your Honor, that has — I would like to get outside the presence of the jury again, if we might. *Page 488 
"THE COURT: All right."
After a discussion was had in chambers the trial was resumed and the following occurred:
 "MR. HEAPS: Mr. Leu, you say you know what a photo-electric intoximeter test is?
"A. Yes.
 "Q. I will ask you if it isn't a fact that you have blown up such a machine in the past?
"A. I think I have, yes.
 "Q. Yes, sir. And you blew it up on that occasion back on October 4th, 1976, didn't you?
"MR. TUCKER: We object.
"THE COURT: All right, sustained.
 "MR. TUCKER: And move to exclude it and move for a mistrial.
 "THE COURT: What the attorneys say are not evidence in the case and there has been no answer, disregard the question.
 "MR. HEAPS: I would like to point out, Judge — well, let me ask him this question; your physical condition at that time was the same as it was in October of 1977, wasn't it?
"MR. TUCKER: We object.
"THE COURT: Sustain.
 "MR. TUCKER: We move to exclude and ask the Court to instruct the jury not to consider it and ask for a mistrial.
 "THE COURT: You are concerned with nothing but evidence, what they say is not evidence and overruled on the mistrial."
It is to be noted that appellant never answered the questions posed to him. In Crouch v. State, 53 Ala. App. 261,299 So.2d 305, this court said:
 ". . . The witness had not answered, hence, only a question was in the record. Ordinarily a mistrial is too drastic a penalty in such a posture.
 "A mistrial only springs into being upon `a manifest necessity * * * or when the ends of justice would otherwise be defeated.' Code 1940, T. 30, Section 100. Thomas v. Ware, 44 Ala. App. 157, 204 So.2d 501; Harnage v. State, 290 Ala. 142, 274 So.2d 352." See also Kendricks v. State, Ala.Cr.App., 378 So.2d 1203, and authorities therein cited.
We have carefully searched the record for errors injuriously affecting the substantial rights of the appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.