On Application for Rehearing

PER CURIAM.
This Court’s unpublished memorandum issued on February, 28, 2014, is withdrawn, and the following opinion is substituted therefor.
*782 Jason Dean Tulley was convicted of carrying a pistol on premises not his own. See § 13A-11-52, Ala.Code 1975. We affirm.
On March 31, 2011, Tulley, who had a pistol unconcealed in a hip holster, entered the First Educators Credit Union (“the credit union”) in the City of Jacksonville to conduct business there. James Clayton, an officer with the Jacksonville Police Department, was working off-duty as a security officer at the credit union. Clayton saw Tulley walk into the credit union with the pistol on his hip.
Clayton approached Tulley and told him that he could not carry the pistol in the credit union and that he needed to return the pistol to his vehicle. According to Clayton, “[a]t first, [Tulley] was very argumentative about it” and asserted that “[i]t was his constitutional right to carry a fee-arm into the building.” (R. 9.) Clayton testified that Tulley was “defiant” but did not raise his voice or shout. Tulley ultimately complied with Clayton’s request, returned the pistol to his vehicle, and reentered the credit union.
Tulley was arrested a few days later and was charged with carrying a pistol on premises not his own. See § 13A-11-52, Ala.Code 1975.[1] Tulley was convicted in the Jacksonville Municipal Court, where he was ordered to pay a $50 fine and $200 in costs. Tulley appealed to the Calhoun Circuit Court.
In the circuit court, Tulley filed two motions to dismiss the charge against him; the circuit court denied both. Following a bench trial, Tulley was convicted and was sentenced to 30 days’ imprisonment and ordered to pay court costs and a $200 fine. The circuit court suspended Tulley’s 30-day sentence and placed him on 6 months’ probation. Tulley moved for a new trial; that motion was denied by operation of law. See Rule 24.4, Ala. R.Crim. P.

Standard of Review

“In considering an appeal from a bench trial, the standard for review is well established.
“‘“When evidence is presented ore tenus to the trial court, the court’s findings of fact based on that evidence are presumed to be correct,” Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994); “[w]e indulge a presumption that the trial court properly ruled on the weight and probative force of the evidence,” Bradley v. State, 494 So.2d 750, 761 (Ala.Crim.App.1985), aff'd, 494 So.2d 772 (Ala.1986); and we make “ ‘all the reasonable inferences and credibility choices supportive of the decision of the trial court.’ ” Kennedy v. State, 640 So.2d 22, 26 (Ala.Crim.App.1993), quoting Bradley, 494 So.2d at 761. “ Where evidence is presented to the trial court ore tenus in a nonjury case, a presumption of correctness exists as to the court’s conclusions on issues of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.’ ” Ex parte Jackson, 886 So.2d [155] at 159 [ (Ala.2004) ], quoting State v. Hill, 690 So.2d 1201, 1203 (Ala.1996), quoting in turn Ex parte Agee, 669 So.2d 102, 104 (Ala.1995).
“‘However, “[t]he ore tenus presumption of correctness applies to findings of fact, not to conclusions of law.” City of Russellville Zoning Bd. of Adjustment v. Vernon, 842 So.2d *783 627, 629 (Ala.2002). “[T]he ore tenus rule does not extend to cloak a trial judge’s conclusions of law, or incorrect application of law to the facts, with a presumption of correctness.” Eubanks v. Hale, 752 So.2d 1113, 1144-45 (Ala.1999). “ ‘ “[W]hen the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court’s judgment.” ’ ” Ex parte Jackson, 886 So.2d at 159, quoting Hill, 690 So.2d at 1203, quoting in turn, Ex parte Agee, 669 So.2d at 104. Thus, we review the trial court’s conclusions of law and its application of law to the facts under the de novo standard of review.’ ”
Bailey v. City of Ragland, 136 So.3d 498, 502 (Ala.Crim.App.2013) (quoting Washington v. State, 922 So.2d 145, 157-58 (Ala.Crim.App.2005)).

Discussion

I.
Tulley challenges the sufficiency of the evidence to sustain his conviction under § 13A-11-52, Ala.Code 1975.
A.
We first address Tulley’s contention that the City failed to present sufficient evidence indicating that “Tulley was not allowed to bring his lawfully carried pistol into the credit union.” (Tulley’s brief, p. 17.) Tulley argues:
“The credit union was generally open to the publie and had not communicated to Mr. Tulley, either personally or by a public notice, that he was not allowed to carry his pistol onto the premises. Because the City failed to present evidence that Mr. Tulley was not allowed to openly carry his pistol into the credit union either by operation of law or because he defied an order by the owner or authorized agent of the credit union that he not carry a pistol onto the premise, the City failed to present a prima facie case that Mr. Tulley violated § 13A-11-52.”
(Tulley’s brief, p. 17.)
At all times relevant to this case, § 13A-11-52 provided:
“Except as otherwise provided in this article, no person shall carry a pistol about his person on premises not his own or under his control; but this section shall not apply to any sheriff or his deputy or police officer of an incorporated town or city in the lawful discharge of the duties of his office, or to United States marshal or his deputies, rural free delivery mail carriers in the discharge of their duties as such, bonded constables in the discharge of then-duties as such, conductors, railway mail clerks and express messengers in the discharge of their duties.”[2]
Tulley’s argument turns on the meaning of the phrase in § 13A-11-52 “on premises *784 not his own or under his control.” This Court has-stated:
“The Alabama Supreme Court interpret ed a former codification of this prohibition to apply only to the carrying of a pistol on the private property of others — not on any public property. Isaiah v. State [176 Ala. 27], 68 So. 53 (Ala.1911).[2]

"____

“2 The statute reviewed in Isaiah v. State, 58 So. 53 (Ala.1911), stated, in pertinent part, as follows: ‘It shall be unlawful for any person to carry a pistol about his person on premises not his own or under his control.’ This language was carried over in its entirety to § 13A-11-52. Although the current statute has include[d] exceptions (expressed in the language ‘[e]xcept as otherwise provided in this article'), no exception applies to the facts before'us. In view of the facts of this case, we conclude that the interpretation in Isaiah of the language now presented is authoritative.”
E.T. v. State, 682 So.2d 508, 509 (Ala.Crim.App.1996) (emphasis added).
Thus, E.T. cited as binding authority the Alabama Supreme Court’s construction in Isaiah v. State, 176 Ala. 27, 58 So. 53 (1911), of the predecessor to § 13A-11-52; specifically, NT. recognized that § 13A-11-52 does not generally prohibit the carrying of an unconcealed weapon on “public property” — rather, § 13A-11-52 generally prohibits the carrying of a weapon “on the private property of others.”
Tulley does not contend that he personally owned the premises of the credit union or that, by some proprietary interest, those premises were “under his control.” Rather, he argues that because the credit union was generally open to the public for business, the “public-property” exception recognized in Isaiah and E.T. applies in his case. We disagree.
Not long after the Alabama Supreme Court’s decision in Isaiah, the Alabama Court of Appeals decided two cases that are instructive here. First, in Bell v. State, 11 Ala.App. 214, 65 So. 688 (1914), the Court of Appeals rejected Bell’s argument that the location where he was ar-résted for violating the precursor to § 13A-11-52 was a “public street.” “[T]he place where the defendant was when he had a pistol in his hand was at the time in the possession of the Central of Georgia Railroad Company, and was within the inclosure of a structure which then was in course of erection and has since been completed by the railroad company.” 11 Ala. App. at 215, 65 So. 688. In affirming Bell’s conviction, the Court stated: “The evidence that that space was then used as a passageway by the public in going to and from the trains, and was spoken of by the witness as a sidewalk, had no tendency, in view of the testimony of the witness as a whole, to prove that it was part of a public street.” 11 Ala.App. at 215, 65 So. 688 (emphasis added).
In Norton v. State, 11 Ala.App. 216, 65 So. 689 (1914), decided the same day as Bell, the evidence indicated the following:
“[A]t the time the defendant carried the pistol in question, one Holmes was operating on his own premises:a public gin, which was located along the side of and near the public road that passed or led by said gin; and that he (Holmes), for purposes of egress and ingress to and from his gin to the said public road, had opened up on his said premises a road, which led from the said public road to his said gin, and over which the public were impliedly invited to travel in bringing their cotton to and from his gin or in coming there for other purposes connected therewith. While the state’s *785 evidence tended to show that the defendant, who came in his buggy from the public road to the gin over the ginhouse road mentioned, with his pistol in the bottom of his buggy, did, after reaching the gin, get out of his buggy, pick up his pistol, and with it in his hand go out of the road into the ginhouse yard; yet the evidence for the defendant tended to show that at no time did he get outside of this ginhouse road with his pistol, but that he remained in said road during all the time that he had the pistol while at the gin and that the pistol was never concealed.”
11 Ala.App. at 217-18, 65 So. 689 (emphasis added). Norton argued that he was entitled to have the jury instructed that he was entitled to an acquittal if the landowner either had “dedicated to the public the road” where he possessed the pistol or had opened that road to the public with an invitation to the public to travel on it; Id. The Court of Appeals, in rejecting .this argument and affirming Norton’s- conviction, stated:
“[I]t seems to us plain that while, so far as the statute mentioned is concerned, a person has the right to carry a pistol unconcealed upon his own premises or upon premises, though not his own, that are in his possession or under his control, or, since he is a part of the public and has a common interest, title, and right, as such, upon any property owned by or belonging to the public, as public highways, public parks, public buildings, etc., the title to which is in the public, the state or nation; yet he is not permitted to carry such pistol, whether concealed or unconcealed, upon the premises of another, not under his control, although such premises, at the time of such carrying, had, by reason of the use to which the owner had put them, become a public place. Holmes, by his act in operating a public gin on his premises and in opening up the mentioned road to it for the purposes stated, no doubt made each place (the gin and the road) a public place, but neither the gin nor the road became thereby dedicated to the public, that is, neither became public property; since the public, as the result of such act, .had in no sense any right, title, or interest in either, but merely an invitation and license to come to the one over the. other, which invitation and license Holmes could revoke or withdraw whenever , he saw fit by discontinuing the operation of -the gin and by closing up the road, or otherwise.... It cannot with any greater degree of logic or reason be urged that he had dedicated the road to, the public than that he had dedicated his gin to the public; and it can no more be said that he had dedicated his gin to the public than it can be said that a hotel proprietor or a theater manager dedicates his hotel or opera house to the public by opening the doors of their respective buildings and inviting the public thereto to enjoy for a reward the character of entertainment to which such buildings are severally adapted.
“For any act to constitute a dedication, it must confer some property right upon the public — either in the thing itself or to some easement therein — which the grantor cannot revoke; otherwise, it is a mere license, and the title remains in the licensor.... The public had no title to the road in question nor to any easement therein, but such title remained, though the road became a public place, the individual property of Holmes, and the defendant had, under the statute, no inore right to carry a pistol, though unconcealed, on such road than he did on the ginhouse yard or grounds, .or at other places or parts of the plant.”
*786 11 Ala.App. at 219-20, 65 So. 689. Thus, Bell and Norton demonstrate- that Tulley’s argument — that because the credit union was generally open to the public for business, the exception for “public property” recognized in Isaiah and E.T. applies in his case — is without merit.
Tulley’s remaining arguments as to this question are not persuasive. First, Tulley cites the definition of “public - place” in § 13A-11-59, Ala.Code 1975. That definition, however, is expressly limited to the use of the term “public place” in § 13A-11-59, which is not at issue in this case.
Second, Tulley cites a 1984 opinion of the attorney general stating that generally “a person [may] carry an unlicensed and unconcealed pistol anywhere, either on his own property, on the public highways, public property or on the land of another person without violating § 13A-11-52 or § 13A-ll-73[ ] (provided] he is not riding in a vehicle).” Op. Att’y Gen. No. 84-205 (March 22, 1984). That opinion, as we discuss more fully below, is based on an overly broad reading of Looney v. State, 41 Ala.App. 582, 141 So.2d 535 (1962).
Finally, Tulley urges this Court to adopt an interpretation of § 13A-11-52 that would permit an individual “to openly carry a pistol onto a premise open to the public, or upon a premise he was licensed, invited or privileged to enter, unless they are notified by an owner or authorized person of the premise they are not welcome to carry that pistol on that premise.” Tulley contends that this standard “reflects the popular sentiment in Alabama.” (Tulley’s brief, p. 22.)
Tulley’s argument, presented in. his challenge to the sufficiency of the evidence, would have us,construe § 13A-11-52 as requiring the prosecution to prove as a part of its prima facie case that the accused did not have the express or implied permission of the premises owner.[3] The plain meaning of “premises not his own or under his control,” however, does not impose the notice requirement that Tulley urges us to adopt. Tulley’s position would require us to add an exception to the prohibition stated in § 13A-11-52 for cases in which “the person has the consent of the owner or legal possessor of the premises.” Although the legislature has done precisely that in its recent amendment to § 13A-11-52, see Act No. 2013-283, Ala. Acts 2013, effective August 1, 2013, that amendment has no application to Tulley’s case, and this Court may not disregard the plain meaning of the version of § 13A-11-52 that applies to Tulley’s case. As the Alabama Supreme Court has recently reiterated:
“ ‘In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:
“ ‘ “ ‘Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.’ ”
“ ‘Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998) (quoting IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)); see also Tuscaloosa County Comm’n v. Deputy Sheriffs’ Ass’n, 589 So.2d 687, *787 689 (Ala.1991); Coastal States Gas Transmission Co. v. Alabama Pub. Serv. Comm’n, 524 So.2d 357, 360 (Ala.1988); Alabama Farm Bureau Mut. Cas. Ins. Co. v. City of Hartselle, 460 So.2d 1219, 1223 (Ala.1984); Dumas Bros. Mfg. Co. v. Southern Guar. Ins, Co., 431 So.2d 534, 536 (Ala.1983); Town of Loxley v. Rosinton Water, Sewer, & Fire Protection Auth., Inc., 376 So.2d 705, 708 (Ala.1979). It is true that when looking at a statute we might sometimes think that the ramifications of the words are inefficient or unusual. However, it is our job to say what the laiv is, not to say what it should be. Therefore, only if there is no rational way to interpret the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this Court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers. See Ex parte T.B., 698 So.2d 127, 130 (Ala.1997).’”
Thomas v. Merritt, 167 So.3d 283, 291 (Ala.2013) (quoting DeKalb Cnty. LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275-76 (Ala.1998) (emphasis added)). See also Ex parte Christopher, 145 So.3d 60, 73 (Ala.2013) (Moore, C.J., concurring specially) (“ ‘ “[T]o declare what the law is, or has been, is a judicial power; to declare what the law shall be, is legislative Sanders v. Cabaniss, 43 Ala. 173, 180 (1869) (quoting Thomas M. Cooley, Constitutional Limitations 91-95 (1868)).”).
Here, there was sufficient evidence indicating that the premises in question were “premises not [Tulléis] own or under his control.”
B.
Citing C.D.J. v. State, 671 So.2d 139 (Ala.Crim.App.1995), and K.J. v. State, 690 So.2d 541 (Ala.Crim.App.1997), and the decisions on which those cases relied, Tul-ley contends that to prove that he was in violation of § 13A-11-52, Ala.Code 1975, the City of Jacksonville (“the City”) was required to prove that he did not have a license issued under § 13A-11-73, Ala. Code 1975. We disagree.
At all times relevant to this case, § 13A-11-73 provided: “No person shall carry a pistol in any vehicle or concealed on or about his person, except on his land, in his own abode or fixed place of business, without a licence therefor as hereinafter provided.” [4]
In C.D.J., law-enforcement officers, who were responding to a call that shots had been fired at Valley Skate Center, stopped the vehicle in which C.D.J. was a passenger and, after being given consent to search the vehicle, discovered a short-barreled shotgun and two pistols in the hatchback of the vehicle. C.D.J., a juvenile, was adjudicated delinquent on the offenses of carrying a pistol on premises not his own under § 13A-11-52, Ala.Code 1975, and of unlawful possession of a short-barreled shotgun under § 13A-11-63, Ala.Code 1975. As to his conviction under § 13A- *788 11-52, C.D.J. argued “that § 13A-11-52 should be read in pari materia "with § 13A-11-73 so as to require proof that the accused had no license before § 13A-11-52 could be violated.” C.D.J., 671 So.2d at 141. This Court, in agreeing with C.D.J., stated:
“In Braxton [v. State, 350 So.2d 753 (Ala.Crim.App.1977) ], this court addressed a similar conflict between § 13A-11-73 and § 13A-11-50. Section 13A-11-50 states:
“‘Except as otherwise provided in this Code, a person who carries concealed about his person a bowie knife or knife or instrument of like kind or description or a pistol or firearm of any other kind or an- air gun shall, on conviction, be fined not less than $50.00 nor more than $500.00, and may also be imprisoned in the county jail or sentenced to hard labor for [not] more than six months.’
“In construing the conflict between the two sections, this court stated in Brax-ton:
“ ‘Section 175 [now codified at § 13A-11-73] applies to carrying an unlicensed pistol concealed on the person or in a vehicle, whereas § 161 [now codified at § 13A-11-50], supra, applies to carrying certain enumerated weapons concealed upon the person. Section 161 makes no exception for carrying a licensed pistol and thus insofar as they conflict, § 175 would prevail, it being the later statute and being a complete revision of the subject matter. Stinson v. State, 28 Ala.App. 559, 190 So. 303 (1939). Aside from the question of whether § 175 pro tanto repealed § 161, it is abundantly clear that § 161 never covered the subject of carrying an unlicensed pistol in a vehicle. Section 175, supra, is the only statute which could have been applicable to the situation.’
“Braxton, 350 So.2d at 755. (Emphasis supplied.)
“Here, as in Braxton, there is a conflict between the two statutes. Section 13A-11-52, like § 13A-11-50, does not permit the carrying of a pistol outside of a person’s own premisés under any circumstances. However, that section does begin with the phrase ‘[ejxcept as otherwise provided in this article.’ Section 13A-11-73 clearly allows a person with a pistol license to carry a pistol in a vehicle or concealed on the person. Furthermore, in Morris v. State, 342 So.2d 417, 418 (Ala.Cr.App.1977), and Looney v. State, 41 Ala.App. 582, 141 So.2d 535, 536 (1962), this court held that § 13A-11-73 does not prohibit carrying an unlicensed pistol if the pistol is unconcealed and the person is on foot,
“Based on the phrase ‘[e]xcept as otherwise provided in this article’ and this court’s reasoning in Braxton, we hold that § 13A-11-73 is the correct charge for possession of an unlicensed pistol. Section 13A-11-52 appliés only [to] the extent that it is consistent with § 13A-11-73 because it is ‘the later statute and a complete revision of the subject matter.’ Braxton, 350 So.2d at 755. Therefore, the state should have been required to prove all of the elements of a violation of § 13A-11-73. This court has repeatedly held that the state must prove that the defendant was not issued a pistol license by the sheriff of the defendant’s county of residence. D.K.F. v. State, 651 So.2d 48 (Ala.Cr.App.1994); Sellers v. State, 507 So.2d 540 (Ala.Cr.App.1985), rev’d on other grounds, 507 So.2d 544 (Ala.1986), on remand, 507 So.2d 545 (Ala.1987); Bagony v. City of Birmingham, 371 So.2d 80 (Ala.Cr.App.1979). The state did not present proof that the appellant did not have a license *789 to carry a pistol issued by the sheriff of Jefferson County. Therefore, the state did not meet its burden on this charge.”
671 So.2d at 141-42.
In K.J. v. State, 690 So.2d 541 (Ala.Crim.App.1997), law-enforcement officers saw K.J. “removing a ‘partial silver object,’ which was concealed by his shirt, from his waistband.” One of the officers then observed K.J. “bend down behind a vending machine and, shortly thereafter, heard a noise that ‘sounded like a heavy object hitting concrete.’” The officers subsequently retrieved “a silver .9 millimeter firearm ... from behind the vending machine where [K.J.] was seen bending down,” 690 So.2d at 545.
This Court in KJ. recognized the holding in C.D.J, “that the State, in making out a prima facie case under § 13A-11-52, must prove, in accordance with § 13A-11-73, that a defendant, charged under § 13A-11-52, has not been issued a license to carry a concealed weapon on the person.” 690 So.2d at 544. In K.J., however, this Court also recognized that the decision in E.M. v. State, 675 So.2d 90 (Ala.Crim.App.1995), permitted the State, “when [a charge under § 13A-11-52] is brought against a juvenile defendant, ... to show that the defendant was under the age of 18 at the time of the offense and, therefore, could not legally have been issued a license to carry a pistol on the person.” 690 So.2d at 545. Thus, in K.J., this Court held that, because the State had proved that K.J. was under the age of 18 and therefore could not have legally been issued a license to carry a pistol under § 13A-11-73, there was sufficient evidence to support his adjudication of delinquency under § 13A-11-52. Id.
As noted above, Tulley contends that to prove that he was in violation of § 13A-11-52, the City was required to prove that Tulley did not have a license issued pursuant to § 13A-11-73. Indeed, the undisputed evidence is that Tulley in fact had a license issued pursuant to § 13A-11-73, and he therefore argues that under C.D.J. and KJ. the City simply could not.establish that he was in violation of § 13A-11-52.
Although language in C.D.J. and KJ. appears'to support Tulley’s position, the facts of the instant case distinguish it from those decisions. K.J. had a concealed pistol on his person, and C.D.J. had the pistol in a vehicle. In each case, the court stated that to the extent § 13A-11-52 and § 13A-11-73 were in conflict, those provisions would have to be read in pari materia,; K.J., 690 So.2d at 544-45; C.D.J., 671 So.2d at 141-42.
Section 13A-11-52, as discussed above, states a broad prohibition: “Except as otherwise provided in this article, no person shall carry a pistol about his person on premises not his own or under his con-trol_” Section 13A-11-73, among other things, specifically provides for carrying a pistol concealed or in a vehicle under certain circumstances if the individual possesses a license issued under § 13A-11-73. Thus, § 13A-11-73 creates an exception to the broad prohibition of § 13A-Í1-52 if an individual possesses an appropriate license and the pistol is either concealed or in a vehicle.
Because the facts in K.J. and C.D.J. presented situations of potential conflict between § 13A-11-52 and § 13A-11-73, it was appropriate for this Court to consider those sections together. In Tulley’s case, however, it is undisputed that the pistol he was carrying was not concealed on his person and not in a vehicle. The language of § 13A-11-73 does not address an individual carrying a pistol that is not concealed on his or her person. Thus, there is no conflict in the instant case between *790 § 13A-11-52 and § 13A-11-73, and C.D.J. and KJ. are not controlling here.
To the extent that language in KJ. and C.D.J. suggests that in every case alleging a violation of § 13A-11-52 the prosecution also must prove that the accused did not have a license issued under § 13A-11-73, that language is dicta and inconsistent with the language of § 13A-11-52 and § 13A-11-73.
C.D.J. cites Morris v. State, 342 So.2d 417, 418 (Ala.Crim.App.1977), and Looney v. State, 41 Ala.App. 582, 141 So.2d 535, 536 (1962), as decisions that “held that § 13A-11-73 does not prohibit carrying an unlicensed pistol if the pistol is unconcealed and the person is on foot.” C.D.J., 671 So.2d at 142. In Looney, the Alabama Court of Appeals quoted, but did not expressly adopt, the following statement from a 1955 attorney general’s opinion interpreting § 163, Ala.Code 1940 (now § 13A-11-52, Ala.Code 1975), and § 175, Ala.Code 1940 (now § 13A-11-73, Ala. Code 1975): “ ‘[A] person may carry an unconcealed and unlicensed 'pistol anywhere, either on his own property, ... on the public highways, public property or the land of another person without violating either Section 163, [Ala.Code 1940,] or Section 175, [Ala.Code 1940].’” Looney, 41 Ala.App. 582, 583, 141 So.2d 535 (1962) (quoting 79 Quarterly Reports of the Attorney General 31, 35 (1955) (emphasis added)).
The Court of Appeals did not state the facts underlying its decision in Looney other than noting that Looney was charged with carrying ‘“a gun, pistol, or bowie knife or like instrument without a lawful permit to carry the same.’ ” 41 Ala.App. at 583, 141 So.2d at 536 (quoting the complaint). ' Without providing any facts indicating where Looney was at the time of the alleged offense (such as on the property of another), the Court held that the complaint was defective because it “omitted any allegation of the weapon being carried concealed or in a vehicle.” Id. It appears that former § 175, Ala.Code 1940 (1958 Recomp.) (the predecessor to § 13A-11-73, Ala.Code 1975), was the only provision the Court considered that Looney could have violated. To the extent Looney suggests that former § 163, AIa.Code 1940 (Recomp.1958) (the predecessor to § 13A-11-52, Ala.Code 1975), no longer applied to carrying an unconcealed and unlicensed gun on the property of another, that suggestion would have been inconsistent with the plain language of former § 163, Ala. Code 1940 (Recomp.1958), as well as with the reasoning of the 1955 attorney general’s opinion cited in Looney.
As noted above, the 1955 attorney general’s opinion quoted in Looney includes the following statement: “ ‘[A] person may carry an unconcealed , and unlicensed pistol ... on ... the land of another person without violating Section 163The attorney general made that statement, however, after he had provided a lengthy summary of the legislative history of the relevant Code sections at issue. That history makes it clear that the basis for the attorney general’s opinion regarding former § 163 was that, in his opinion, § 163 had been implicitly repealed. The attorney general’s opinion states:
“The status of pistols, either concealed or unconcealed, has varied considerably over the years from 1936 to the present [1955]. It is necessary to trace carefully the status of the law from the passage of the ‘Uniform Firearms Act’ in 1936 to answer your questions and explain the reasons therefor.
“Section 163 of Title 14, Code of Alabama 1940, reads as follows:
‘“Carrying pistol on premises not his own; who may carry pistol. — Except as otherwise provided in this *791 chapter no person shall carry a pistol about his person on premises not his own or under his control.... ’
“In 1936, however, the phrase ‘except as otherwise provided in this chapter’ was not a part of Section 163, supra. In 1936, the ‘Uniform Firearms Act’ was enacted by Act No. 82, General Acts 1936, Extra Session, page 51. Section 22 of this Act repealed all inconsistent acts. It was held that the ‘Uniform Firearms Act’ was intended as an entire revision of the subject matter contained therein, and laws inconsistent therewith were repealed. Stinson v. State, 28 Ala.App. 559, 190 So. 303 [ (1939) ].
“However, in the Code of Alabama 1940, the present Section 163 of Title 14, supra, was codified along with Sections 172 through 186 of Title 14 thereof. In an official opinion dated July 31, 1941 (Quarterly Report of Attorney General, Vol. 24, page 126), it was held that this codification reenacted the present Section 163, supra, as well as the ‘Uniform Firearms Act’ as embodied in Sections 172 through 186, supra. The wording of Section 175, supra, at that time was as follows:
“ ‘Carrying pistol. — No person shall carry a pistol in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefor as hereinafter provided.’
“The opinion of the Attorney General, supra, further held that both Sections 175 and 163 had fields of operation; that Section 175 forbad a person to carry a pistol in a vehicle or concealed without a license; and that Section 163 permitted a person to carry an unconcealed pistol on not only his own premises but on the public highways and publicly ■ owned property. The Supreme Court case of Isaiah v. State, 176 Ala. 27, 58 So. 53 [(1911)], clearly supports this holding.
“In 1947, Section 175, supra, was amended by Section 3, Act. No. 616, General Acts 1947, page 463, to read as follows:
“ ‘No person shall carry a pistol, EITHER OPENLY OR concealed, in any vehicle or on or about his person, except ON HIS LAND,. in his own abode or fixed place of business, without a license therefor or hereinafter provided.’
“This amendment clearly prohibited the carrying of an unlicensed pistol either openly or concealed except on the land, place of abode, or fixed place of business of the person carrying it. Thus, it is apparent that Section 175, as amended, supra, preempted the entire field regulating the carrying of pistols and served impliedly as a pro tanto repeal of Section 163, supra. See, Steele v. State, 61 Ala. 213 [ (1878) ].
“In 1951 the Legislature'again amended Section 175 of Title 14, supra, relaxing its prohibition considerably. Act No. 784, supra, revised and reenacted Section 172 through 186, supra. Section 175, the section crucial to the decision of these questions, was amended to read as follows:
“ ‘Carrying pistol. — No person shall carry a pistol, concealed, in any vehicle or on or about his person, except on his land, in his own abode or fixed place of business without a license therefor as hereinafter provided.’
“Obviously, this section prohibits only the carrying of concealed pistols away from a person’s land, abode, or fixed place of business, without a license. No reference is made to unconcealed pistols. Accordingly, the entire field of regulation of pistols having been preempted by Act No. 616, supra, and Section 163 *792 having thus been impliedly repealed, the operation of Section 163, supra, was not revived by the later relaxing of this strict control by ■ virtue of the 1951 amendment of Section 175, supra.
“To recapitulate, for the above reasons, it is my opinion , that a person may carry an unconcealed and unlicensed pistol anywhere, either on his own property, openly in a vehicle, on the public highways, public property or the land of another person without violating either Section 163, supra, or Section 175, as amended, supra. Section , 175, as amended, supra, prohibits the carrying of a concealed and unlicensed pistol off the land or place of abode or fixed place of business of the bearer. Therefore, such pistol may not be carried concealed to the premises o,f another, in a motor vehicle, or on public property. Lastly, a licensed pistol may be carried concealed anywhere if the license be an unlimited one, but if the license be a qualified one, the pistol may be carried only in accordance with the terms of the qualifications on the license. See Sections 177, as amended, supra.”
79 Quarterly Reports of the Attorney General 33-35 (1955) (capitalization original; emphasis added).
Thus, the statement from the attorney general’s opinion quoted in Looney was based on the attorney general’s conclusion that § 163, Ala.Code 1940, had been implicitly repealed in 1955 and no longer had any force or effect; according to the attorney general, the only operative provision was § 175, which, in. 1955, did not prohibit the carrying of an unlicensed and unconcealed pistol. At the time Looney was decided, however, § 163 was in effect, because the legislature had included § 163 in the 1958 recompilation of the Code of Alabama 1940. See, e.g., Ex parte State Dep’t of Revenue, 683 So.2d 980, 982 (Ala.1996) (“[T]he adoption of the entire Code supersedes the original enactments and any pri- or codification.”). This Court in KJ. recognized that in 1997, at the time K.J. was decided, § 163 was in effect because it had been included in the Code of Alabama 1975. This Court noted:
“This Court is cognizant of the fact that the court’s holding in Stinson [v. State, 28 Ala.App. 559, 190 So. 303 (1939),] seems to [imply] that the precursor to § 13A-11-52 [§ 163] was repealed by the enactment of the Uniform Firearms Act; however, the legislative history of the current § 13A-11-52 shows that the Legislature re-codified that section on two separate occasions following this Court’s holding in Stinson, in 1940 and 1975. ‘It is a fundamental principle of statutory construction that in enacting [a] statute the legislature had full knowledge and information as to prior and existing law and legislation on the subject of the statute.’ Miller v. State, 349 So.2d 129, 131 (Ala.Cr.App.1977).”
K.J., 690 So.2d at 543.
Under Isaiah, supra, Bell, supra, and Norton, supra, the plain meaning of former § 163, which was in effect at the time Looney was decided, would have prohibited carrying an unlicensed and unconcealed pistol on premises not belonging to the accused or under his control. As noted above, however, because Looney does not state the particular facts involved, it is impossible to determine where Looney was at the time of the alleged offense (such as on the property of another),
C.D.J. also cites Morris, supra, in which this Court held that the issue whether the defendant in that case, who had been convicted of resisting arrest, had a pistol permit was “immaterial” because “[h]e had a right to carry the pistol unconcealed at the time and place of arrest.” Morris, 342 So.2d at 418-19. Like Looney, however, *793 few facts are provided in Morris; therefore, it is impossible to discern whether Morris was in fact in a location that tyould have been in violation of the version. of § 13A-11-52, Ala.Code 1975, that was in effect in 1977. In any event, we reject a reading of Looney and Morris that would circumvent the plain meaning of the language of former § 163, Ala.Code 1940 (Re-comp.1958), as well as the plain meaning of the language of § 13A-11-52, Ala.Code 1975.[5]
In sum, we reject Tulley’s contention that Alabama caselaw required the City to prove a violation of § 13A-11-73 as a part of its case against Tulley for his alleged violation of § 13A-11-52.
II.
Tulley next argues that there is no punishment provision applicable to a conviction under § 13A-11-52 and that, therefore, § 13A-11-52 is unconstitutional. We disagree.
Before trial, Tulley moved to dismiss the charge against him. Among other things, Tulley argued that there is no punishment provision in the Code of Alabama for a conviction under § 13A-11-52; he contended, therefore, that § 13A-11-52 was unconstitutionally vague and that, by charging him under that statute, the City had violated his. right to due process.[6] The circuit court denied this motion, and, following Tulley’s conviction, the circuit court sentenced Tulley to 30 days’ imprisonment and ordered him to pay a $200 fíne and court costs.'
On appeal, Tulley reiterates his due-process and void-for-vagueness arguments and contends that his conviction must be reversed and that a judgment is due to be rendered in his favor.
The precursor to what is now § 13A-11-52 was first enacted by the legislature on August 9,1919. See Act No. 204, Ala. Acts 1919. That act stated, in relevant part:
“To regulate the right to carry a pistol in this State.
“Be it enacted by the Legislature of Alabama:
“Section 1. That it shall be unlawful for any person to carry a pistol concealed about his person.
“Section 2. That it shall be unlawful for any person to carry a pistol about his person on premises not his own or under his control, provided this section shall not apply to any sheriff or his deputy or police officer of an incorporated town or city in the lawful discharge of the duties of his office or United States marshal or their deputies, rural free delivery mail *794 carriers in-the discharge of their duties as such or bonded constable in the discharge of their duties as such.”
Section 3 of that act included the following sentencing provision: “Section 3. Any person violating the provisions of this act must -on conviction be fined not less than fifty nor more than five hundred’ dollars and may also' be imprisoned in the county jail or sentenced to hard labor for the county for not more than six months.”
In the 1923 recodification of Alabama law, the substance of § 2 and § 3 of Act Ño. 204 was codified as § 3487 and § 3488, respectively. Section 3487, Ala.Code 1923, provided:
“Carrying pistol on premises not his own; who may carry pistol. No person shall carry a pistol about his person on premises not his own or under his control; but this section shall not apply to any sheriff or his deputy or police officer of an incorporated town or city in the lawful discharge of the duties of his office, or United States marshal or their deputies, rural free delivery, mail carriers in the discharge of their duties as such, bonded constables in the discharge of their duties as such, conductors, railway mail clerks, and express messengers in the discharge of their duty.”
Section 3488 provided the following punishment for a violation of § 3487:
“Penalty. Any person violating the provisions of the two preceding sections [§§ 3486[7] and 3487] must on conviction be fined not less than fifty nor more than five hundred dollars, and may also be imprisoned in the county jail or sentenced to hard labor for the county for not more than six months.”
In its 1940 recodification, the legislature added an exception to § 3487 and redesig-nated § 3487 as § 163 of Title 14. Section 163 of Title 14 in the 1940 recodification provided:
“Carrying a pistol on premises not his o'm,; who may carry a pistol. Except as otherwise provided in this chapter no person shall cany a pistol about his person on premises not his own or under his control; but this section shall not apply to any sheriff or his deputy or police officer of an incorporated town or city in the lawful discharge of the duties of his office, or United States marshal or them deputies, rural free delivery mail carriers in the discharge of their duties as such, conductors, railway mail clerks, and express messengers in the discharge of their duties.”
Sections 163, 164, and 165 of Title 14, Ala.Code 1940, included references to former §§ 3487, 3486, and 3489, respectively. The legislature did not, however, include the language of former § 3488 — or any reference to it — in the 1940 recodification. Thus, as Tulley points out, the punishment provision that appeared in former § 3488 was omitted from the 1940 Alabama Code.
Section 163 — the successor to former § 3487 — appeared in the 1958 recompilation of the 1940 Alabama Code, appeared in the 1975 Code as § 13-6-122, and was later redesignated as § 13A-11-52 of the Criminal Code — that being the statute under which Tulley was convicted. The punishment provision designated as § 3488 in the 1923 Code, however, has not appeared in any subsequent recodification. Accordingly, that punishment provision has been repealed since its omission from the Code of Alabama 1940. See, e.g., Ex parte State Dep’t of Revenue, 683 So.2d 980, 982 (Ala. *795 1996) (“[B]y the process of adopting the entire Code, the legislature repeals any portion of the original legislation and prior codification not present in that adoption. See Ex parte Coker, 575 So.2d 43 (Ala.1990). In other words, the adoption of the entire Code supersedes the original enactments and any prior codification.”); see also Densmore v. Jefferson Cnty., 813 So.2d 844, 852 (Ala.2001) (“‘“It is the settled law of this state that the Code of Alabama ... is not a mere compilation of the laws previously existing, but is a body of laws, duly enacted, so that laws, which previously existed, ceased to be law when omitted from [the] Code, and additions, which appear therein, become the law from the approval of the Act adopting the Code.’”” (quoting Swift v. Gregory, 786 So.2d 1097, 1100 (Ala.2000), quoting in turn State v. Towery, 143 Ala. 48, 49, 39 So. 309, 309 (1905))).
The City contends that the general sentencing provisions in §§ 13A-5^4, 13A-5-7, and 13A-5-12, Ala.Code 1975, provide a punishment for a violation of § 13A-11-52. Section 13A-5-4 provides:
“(a) The particular classification of each felony defined in this title, except murder under Section 13A-6-2, is expressly designated in the chapter or article defining it. Any offense defined outside this title which is declared by law to be a felony without specification of its classification or punishment is punishable as a Class C felony.
“(b) The particular classification of each misdemeanor defined in this title is expressly designated in the chapter or article defining it. Any offense defined outside this title which is declared by law to be a misdemeanor without specification as to classification or punishment is punishable as a Class C misdemeanor.
“(c) Every violation defined in this title is expressly designated as such. Any offense defined outside this title without specification as to punishment or as to felony or misdemeanor is a violation.”
Section 13A-5-7 provides:
“(a) Sentences for misdemeanors shall be a definite term of imprisonment in the county jail or to hard labor for the county, within the following limitations:
“(1) For a Class A misdemeanor, not more than one year.
“(2) For a Class B misdemeanor, not more than six months.
“(3) For a Class C misdemeanor, not more than three'months.
“(b) Sentences for violations shall be for a definite term of imprisonment in the county jail, not to exceed 30 days.”
Section 13A-5-12 provides a range of fines applicable to misdemeanors and violations. Section 13A-5-4, however, forecloses the possibility that a conviction under § 13A-11-52 may be considered a “violation” for purposes of sentencing. Section 13A-5-4, as noted, provides that “[e]very violation defined in this title is expressly designated as such ” (emphasis added). Section Í3A-11-52 does not include any such designation. Thus, there is no merit to the City’s argument regarding §§ 13A-5-4, 13A-5-7, and 13A-5-12.
As noted above, however, Tulley’s conviction was for violating Jacksonville Ordinance No. 0-514-10. Although the dissenting opinion would ex mero motu hold that the ordinance did not make a violation of § 13A-11-52, Ala.Code 1975, an offense against the City, no one — including Tulley or this Court in its original consideration of- this case — has ever disputed that the ordinance makes a violation of § 13A-11-52, Ala.Code 1975, an offense against the City.[8] At Tulley’s trial, although the City introduced a copy of that *796 ordinance (C. 121; R. 7), Tulley never objected to the introduction of the ordinance or disputed that it makes a violation of § 13A-11-52, Ala.Code 1975, an offense against the City. Indeed, Tulley’s entire constitutional challenge — in the trial court and in this Court — -is premised on the arguments (1) that the ordinance makes a violation of § 13A-11-52, Ala.Code 1975, an offense against the City and (2) that the conduct proscribed by the ordinance is the conduct prohibited by § 13A-11-52, Ala. Code 1975.
We do not agree with the assertion in the dissenting opinion that the jurisdiction of the trial court is “implicate^]” by whether the language of the ordinance under which the defendant was convicted adequately adopts or incorporates a State statute. There is authority that permits an appellant who has, in the trial court, challenged the sufficiency of the City’s evidence to then challenge, on appeal, the City’s proof of the ordinance. See, e.g., Ex parte Maxwell, 439 So.2d 715 (Ala.1983); see also Bailey, supra, Those cases, however, are clear that issues pertaining to proof of an ordinance must be raised in order to be addressed,
In Maxwell, the Alabama Supreme Court held that a “‘defendant’s general motion to exclude the City [of Mobilej’s evidence on the ground that it had “failed to prove a prima facie case” ... preserve[d] the City’s failure to prove the ordinance under which the defendant was prosecuted.’ ” 439 So.2d at 716. Because the City of Mobile had not introduced a copy of the ordinance under which it had prosecuted the defendant and because the defendant had objected to the sufficiency of the City’s evidence, the Alabama Supreme Court reversed the defendant’s conviction.
In Bailey, Linnie Bailey appealed her conviction for harassment — a violation of a municipal ordinance of the City of Ragland that purportedly incorporated § 13A-11-8, Ala.Code 1975. On appeal, Bailey argued “that there was insufficient evidence from which a rational fact-finder could have found her guilty of harassment beyond a reasonable doubt” because, she contended, “the City failed to introduce [into evidence] the ordinance she was charged with having violated.” 136 So.3d at 501. In response, the City argued that Bailey had not
“preserve[d] the issue regarding the City’s failure to introduce the ordinance that Bailey was charged with violating because, in her posttriál motion to reconsider, she stated only that ‘ “there was insufficient evidence presented at trial,” ’ and ‘ “that because of the testimony of the (2) witnesses, the State did not meet its burden of proving the Defendant guilty beyond a reasonable doubt.”’ Thus, the City argue[d], Bailey did not claim, that the City failed to prove a prima facie case, which was the language required by the cases Bailey relied on in her brief, (City’s brief, at 18, citing C. 66.)”
136 So.3d at 501.
This Court, applying controlling precedent from the Alabama Supreme Court, *797 held that Bailey’s postjudgment challenge to the sufficiency of the City’s evidence was sufficient to preserve for appellate review the issue regarding the City’s failure to introduce a copy of the ordinance into evidence. This Court reversed Bailey’s conviction on the basis that, by not introducing a copy of the ordinance into evidence, “the City [had] failed to prove an essential element of its case.” 136 So.3d at 503.
Thus, Bailey and Maxwell involved whether the appellants in those cases had sufficiently preserved the issue for review — i.e., whether a general objection to the sufficiency of the evidence in the trial court preserved for appellate review the specific objection that the city had failed to introduce a copy of the ordinance at issue. Those decisions did not hold that a city’s failure to introduce a copy of an ordinance is a jurisdictional defect that may be raised ex mero motu by an appellate court.
The dissenting opinion cites Crane v. State, 964 So.2d 1254 (Ala.Crim.App.2007), in support of its assertion that an alleged defect in the language of an ordinance introduced into evidence and asserted by a city as adopting a particular statute is a jurisdictional issue. Crane, however, is distinguishable. In Crane, the defendant pleaded guilty to “attempted robbery in the first degree.” This Court stated the following regarding the problem with that guilty-plea conviction:
“We addressed a similar situation in Casey v. State, 925 So.2d 1005, 1006 (Ala.Crim.App.2005), as follows:
“‘Casey was originally indicted for robbery in the first degree, and on February 28, 1983, he pleaded guilty to attempted robbery in the first degree. He claims that the trial court had no jurisdiction to accept the plea because, he argues, the offense he was charged with and to which he pleaded guilty did not exist under Alabama law. In Petty v. State, 414 So.2d 182, 183 (Ala.Crim.App.1982), this Court said:
“‘“Because the definition of robbery has- been enlarged and expanded by the-new criminal code, ‘the former offense of assault with intent to rob has been merged into the present offense of robbery.’ [Marvin v. State, 407 So.2d 576, 579 (Ala.Crim.App.1981).] For this same reason the former crime of attempted robbery now constitutes .robbery. Section 13A~8-43(a) adds a definition that extends robbery to include conduct which occurs in an attempt to commit a theft or in flight after the attempt or commission. Section 13A-8-40(b).”
“ ‘The State concedes that because Casey pleaded guilty to an offense that does not exist, his conviction is void and should be set aside. In Ex parte Wesley, 481 So.2d 1162, 1163 (Ala.1985), the Alabama Supreme Court held that the State may reindict an appellant for the appropriate offense of robbery; in Ex parte Wesley, the appellant had previously been charged with robbery in the first degree, but that charge had been amended pursuant to a guilty-plea agreement to charge the non-existent offense of attempted robbery. Thus, while the first indictment was improper and void, the State could properly charge an offense established by the evidence.’ ”
964 So.2d at 1255.
Thus, in Crane, the offense known as “attempted robbery in the first degree” did not exist because there was no statutory provision designating “attempted robbery in the first degree” as a crime. Rather, the statutory provision for robbery included conduct that constituted attempt *798 ed robbery. In Tulley’s case, however, the statute asserted by the City as being adopted by the ordinance it introduced into evidence— § 13A-11-52, Ala.Code 1975 — clearly prohibited the conduct at issue. The question posed by the dissenting opinion is whether the ordinance adequately adopted that statute as an offense against the City. That question, however, is an issue of proof, like the questions in Maxwell and Bailey; it is not a question implicating the trial court’s jurisdiction.
In Titus v. Braidfoot, 226 Ala. 21, 145 So. 423 (1933), our Supreme Court stated: “When a city passes an ordinance, the presumption arises, without evidence to the contrary, that the municipality did what was necessary to make that ordinance valid. The burden is upon him who challenges the ordinance to show it is invalid.” In this case, however, Tulley has never contended that the ordinance does not incorporate § 13A-11-52, Ala.Code 1975. We do not agree with the dissenting opinion’s suggestion that Tulley’s void-for-vagueness challenge to § 13A-11-52, Ala. Code 1975, sufficiently put the trial court on notice that the ordinance did not adopt § 13A-11-52, Ala.Code 1975. Indeed, as we note above, his void-for-vagueness challenge to § 13A-11-52 is premised on the notion that the ordinance in fact incorporates the conduct proscribed by that code section.
This Court ordinarily does not make arguments on behalf of an appellant in order to reverse a judgment on an issue not preserved below or argued to this Court. See, e.g., Ex parte Borden, 60 So.3d 940, 943 (Ala.2007) (“Additionally, ‘ “[i]t is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.” ’ Butler v. Town of Argo, 871 So.2d 1, 20 (Ala.2003) (quoting Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994))). As noted above, Tulley has never argued that the language of the ordinance failed to adequately adopt or incorporate § 13A-11-52, Ala.Code 1975, thereby making a violation of that section an offense against the City, and this issue therefore is not properly presented for appellate review.
Even if the issue were properly before this Court, however, the language of the ordinance adequately adopts § 13A-11-52, Ala.Code 1975. Subsection (c) of Ordinance No. 0-514-10 includes the following provision:
“Any person committing within the corporate limits of the city, or within its police jurisdiction, an offense as defined by section 13A-1-2 of the Alabama Criminal Code, which offense is not declared by a law of the state to be a felony, misdemeanor or violation shall be guilty of an offense against the city.”
Section 13A-1-2(10), Ala.Code 1975, defines an “offense” as “[cjonduct for which a sentence to a term of imprisonment, or the death penalty, or to a fine is provided by any law of this state or by any law, local law, or ordinance of a political subdivision of this state.” (Emphasis added.) Thus, subsection (c) of Ordinance No. O-514-10 declares that the conduct proscribed by § 13A-11-52, Ala.Code 1975, is an offense against the City, and subsection (d) of that same ordinance includes a provision for punishment for that offense.
The dissenting opinion emphasizes, in subsection (c) of Ordinance No. 0-514-10, the phrase “an offense as defined by section 13A-1-2 of the- Alabama Criminal Code.” The dissenting opinion isolates that phrase, however, from the phrase that immediately follows it, which states “which offense is - not declared by a law of this state to be a felony, misdemeanor or viola *799 tion.” Section 13A-11-52 clearly prohibits certain conduct — namely, it prohibits a person from “carrying] a pistol about his person on premises not his own or under his control.” The “law of this State” — that is, the Code of Alabama — does not declare a violation of § 13A-11-52 “to be a felony, misdemeanor or violation.” The City, however, through its ordinance has declared that the conduct at issue — which is prohibited by § 13A-11-52, Ala.Code 1975, but not designated by state law as a “felony, misdemeanor or violation” — is an offense against the City. Further, in subsection (d) of the ordinance, the City has provided an applicable punishment for that offense.
Subsection (d) of Ordinance No. 0-514-10 states, in relevant part: “A person convicted of a violation of this section shall be punished by a fine not exceeding $500.00 or by imprisonment in the city jail or hard labor for a period not exceeding six months, or by any combination_” Tulle/s sentence was consistent with this subsection. Moreover, subsection (d) of the ordinance is consistent with the version of § 11-45-9, Ala.Code 1975; that was in effect at the time of Tulle/s offense; that Code section provided, in relevant part:
“(a) Municipal ordinances may provide penalties of fines, imprisonment, hard labor, or one or more of such penalties for violation of ordinances.
“(b) No fine shall exceed $500.00, and no sentence of imprisonment or hard labor shall exceed six months except, when in the enforcement of the penalties prescribed in Section 32-5A-191, such fine shall not exceed $5,000.00 and such sentence of imprisonment or hard labor shall not exceed one year.”[9]
In his application for rehearing, Tulley addresses, for the first time, the provision for punishment in subsection (d) of Ordinance No. 0-514-10. Specifically, he argues that subsection (d) conflicts with a provision in former § 11-45-1.1, Ala.Code 1975, and a corresponding provision in former § 11-80-11, Ala.Code 1975.
Tulley’s challenge to the punishment provision of the ordinance, however, is not the constitutional, void-for-vagueness challenge he presented to the trial court and to this Court; rather, his argument is that the punishment provision of the ordinance does not comply with the statutory provisions mentioned above. This challenge, which was not raised in the trial court or in this Court on original submission, is not properly before us. See, e.g., Water Works & Sewer Bd. of City of Selma v. Randolph, 833 So.2d 604, 608-09 (Ala.2002) (“The well-settled rule of this Court precludes consideration of arguments made for the first time on rehearing. See Ex parte Lovejoy, 790 So.2d 933, 938-39 (Ala.2000), where this Court stated: ‘.... “We cannot sanction the practice of bringing up new questions for the first time in application for rehearing.” ’ ” (citations omitted)); cf. Ex parte Childers, 640 So.2d 16, 18-19 (Ala.1994) (holding that an objection, on the basis that the ordinance at issue was “illegal” and in violation of “an existing state statute,” preserved for appeal the argument that the ordinance was in conflict with § 11-45-1.1, Ala.Code 1975).
Even if the challenge were properly before us, however, it is without merit. Former § 11-45-1.1, Ala.Code 1975,[10] provided:
“No incorporated municipality shall have the power to enact any ordinance, rule, or regulation which shall tax, re *800 strict, prevent, or in any way affect’ the possession or ownership of handguns by the citizens of this state. The entire subject matter of handguns is reserved to the State Legislature. This section shall not be construed to limit or restrict the power of a municipality to adopt ordinances which make the violation of a state handgun law a violation of a municipal ordinance to the same extent as other state law violations, or to limit or restrict the power of a municipal court to exercise concurrent jurisdiction with the district court over violations of state handgun laws which may be prosecuted as breaches of a municipal ordinance.”[11]
(Emphasis added.) In relevant part, former § 11-80-11, Ala.Code 1975, provided:
“(a) No county or municipal corporation, instrumentality, or political subdivision thereof, by ordinance, resolution, or other enactment, shall regulate in any manner gun shows, the possession, ownership, transport, carrying transfer, sale, purchase, licensing, registration or use of firearms, ammunition, components of firearms, firearms dealers, or dealers in firearms components.
[[Image here]]
“[(b)(2)] This section shall not be construed to limit or restrict the power of a municipality to adopt or enforce ordinances which make the violation of a state firearm law a violation of a municipal ordinance to the same extent as other state law violations.”[12]
(Emphasis added.)
Relying specifically on the above-emphasized portions of former § 11-80-11 and former § 11-45-1.1, Ala.Code 1975, Tulley argues that the City could punish Tulley “only ... to the extent the State punished an infraction of § 13A-11-52.” (Tulley’s application for reh’g, p. 10.) He further asserts:
“Here, the municipal ordinance punishes Mr. Tulley more harshly than the State law does.... [T]he fact remains that the State, at the time of the prosecution, did not and could not punish someone for violating § 13A-11-52. As such, the punishment provision found. in Ordinance No. O-514-10(d) authorizes a sentence that is greater than the sentence authorized by the state law: the Ordinance punishes the infraction as a violation while the State cannot punish the infraction at all.”
(Tulley’s application for reh’g, p. 10.)
In Crawford v. State, 100 So.3d 610, 614-15 (Ala.Crim.App.2011), this Court stated:
“It is a well established principle of statutory interpretation that ‘[wjhere the meaning of the plain language of the statute is clear, it must be construed according to its plain language.’ Ex parte United Serv. Stations, Inc., 628 So.2d 501, 504 (Ala.1993). ‘Principles of statutory construction instruct this Court to interpret the plain language of a statute to mean exactly what it says and to engage in judicial construction only if the language in the statute is ambiguous.’ Ex parte Pratt, 815 So.2d 532, 535 (Ala.2001).”
*801 The plain language of former § 11-45-1.1, Ala.Code 1975 (and the similar corresponding provision in former § 11-80-11, Ala.Code 1975), does not support Tulley’s position. As Tulley points out, former § 11-45-1.1. permits a municipality to “make the violation of a state handgun law a violation of a municipal ordinance to the same extent as other state law violations ” (emphasis added). “Other state law violations” — unless otherwise specifically provided by the legislature — are punished by municipalities in accordance with § 11 — 45— 9, Ala.Code 1975. Former § 11-45-1.1 places no particular restriction on a municipality’s ability to enact an ordinance adopting punishment provisions consistent with those authorized, in § 11-45-9, Ala. Code 1975. Thus, there is no conflict between the punishment provision of the ordinance in this case and the statutes cited by Tulley.
In City of Decatur v. Lindsey, 989 So.2d 1157 (Ala.Crim.App.2007), this Court considered a similar challenge to a punishment provision of a municipal ordinance. Specifically, the punishment provision of the ordinance at issue there — § 16 — 1(e), Code of Decatur — “provide[d] for a maximum fíne of $5,000 for violations of § 32-5A-191, AkuCode 1975, without regard to whether offender has any prior DUI convictions.” Lindsey argued that this provision for a $5,000 maximum fíne was “void” because it was, he said, inconsistent with § 32-5A-191(e), which provided for a maximum fine of $2,100 for first-time offenders. 989 So.2d at 1158-59.
This Court stated:
“‘“A municipality has the authority to enact ordinances pursuant to its police powers, Ott v. Moody, 283 Ala. 288, 216 So.2d 177 (1968); Smith v. Town of Notasulga, 257 Ala. 382, 59 So.2d 674 (1952), as long as the ordinances are consistent with the general laws of the State. Ala. Const., Art. IV, § 89 (1901); Ala.Code § 11-45-1 (1975).
“‘“Whether an ordinance is inconsistent with the general law of the State is to be determined by whether the municipal law prohibits anything which the State law specifically permits. See Leu v. City of Mountain Brook, Ala. Cr.App., 386 So.2d 483, cert. denied, Ala., 386 So.2d 488 (1980); Atkins v. City of Tarrant City, Ala. Cr.App., 369 So.2d 322 (1979). See also Atchley v. State, Ala. Cr.App., 393 So.2d 1034 (1981); Plump v. City of Birmingham, Ala. Cr.App. 385 So.2d 1349, cert. denied, Ala., 385 So.2d 1351 (1980).” ’
“Smith v. City of Huntsville, 515 So.2d 72, 74 (Ala.Crim.App.1986) (quoting Congo v. State, 409 So.2d 475, 477-78 (Ala.Crim.App.1981))(emphasis added).
“Section 16-l(e), Code of Decatur, does not prohibit conduct that § 32-5A-191(é), Ala.Code 1975, specifically permits. However, it does provide for a greater fine than the fine provided for in § 32-5A-191(e), Ala.Code 1975. This court addressed a similar situation in Donley v. City of Mountain Brook, 429 So.2d 603 (Ala.Crim.App.1982), [rev’d on other grounds, Ex parte Donley, 429 So.2d 618 (Ala.1983),] as follows:
‘“Penalties which may be imposed for violations of municipal ordinances are set out in Alabama Code § 11-45-9 (1975). Section ll-45-9(b) specifically provides:
“Nó fine shall exceed $500.00, and no sentence of imprisonment or hard labor shall exceed six months.”
“ ‘There is no requirement that the punishment for violation of a municipal ordinance and a state statute *802 which proscribes the same act be the same.
“ ‘ “The punishment or penalty imposed by municipal corporations for violation of their ordinances or regulations may differ from the punishment or penalty prescribed by statp law for the same offense, and more specifically, it has been held that greater or lesser penalties than those that are prescribed by state law may be provided for by ordinance .., ” ■
“ ‘C.J.S. Municipal Corporations § 178 (1949).
“ ‘When the state has not preempted the field, the same offense may be proscribed by both state and local legislation and the penalties may be different. Chester Tp. v. Panicucci, 62 N.J. 94, 299 A.2d 385 (1973). That the penalty provided for an offense is not the same under city ordinance-and state law does not render the ordinance invalid provided the penalty is not in excess of that which the municipality has been granted the authority to impose. State v. Weeks, 216 Minn. 279, 12 N.W.2d 493 (1943). Moreover, a municipal ordinance may impose a heavier penalty for an offense than a state statute imposes for the same act in violation of the statute. City of Fort Scott v. Arbuckle, 165 Kan. 374, 196 P.2d 217 (1948).’
“(Emphasis added) (footnote omitted).”
Lindsey, 989 So.2d at 1159-60.
This Court in Lindsey found that the City of Decatur’s ordinance was not in conflict with § 32-5A-191, Ala.Code 1975, because the punishment provisions in § ll-45-9(b) applicable to a municipal conviction for violating § 32-5A-191 and the punishment provisions in § 32-5A-191 applicable to a State conviction for violating § 32-5A-191 “addressed] different subjects.” Lindsey, 989 So.2d at 1161. This Court further noted:
“[A]t the time § 11 — 45—9(b), Ala.Code 1975, was amended to provide for a $5,000 fine for municipal violations of § 32-5A-191, Ala.Code 1975, the legislature approved a greater fine for municipal convictions, regardless of whether the offender had any prior DUI convictions, than it did for a first-time offender under § 32-5A-191'(e), Ala.Code 1975.”
989 So.2d at 1162. This Court rejected Lindsey’s challenge because the maximum fine in the Decatur ordinance did “not exceed the maximum authorized by § 11-45-9(b), Ala.Code 1975.” 989 So.2d at 1162.
At the time of Tulley’s offense, former § 11-45-1.1, Ala.Code 1975, authorized municipalities “to adopt ordinances which make the violation of a state handgun law a violation of a municipal ordinance to the same extent as other state law violations.” Further, § 11-45-9, Ala.Code 1975, authorized the fine and sentence the trial court imposed for Tulley’s conviction.[13] As in Lindsey, nothing indicates that the legislature intended to prohibit municipalities from imposing fines and sentences different than those authorized for a State conviction of the same offense.[14] Accordingly, *803 Tulley’s challenge to the punishment provision of Ordinance No. 0-514-10 is without merit.

Conclusion

The judgment of the circuit court is affirmed.
APPLICATION OVERRULED; UNPUBLISHED MEMORANDUM OF FEBRUARY 28, 2014, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
WELCH, J., concurs. JOINER, J., concurs specially. KELLUM, J., concurs in the result. WINDOM, P.J., dissents. BURKE, J., dissents, with opinion.

. Tulley was charged with violating City of Jacksonville Ordinance No. 0-514-10, which adopts § 13A-11-52, Ala.Code 1975.

. After Tulley’s conviction and sentence, § 13A-11-52, Ala.Code 1975, was amended to provide as follows:
“Except as otherwise provided in this article, no person shall carry a pistol about his person on private property not his own or under his control unless the person possesses a valid concealed weapon permit or the person has the consent of the owner or legal possessor of the premises; but this section shall not apply to any law enforcement officer in the lawful discharge of the duties of his office, or to United States marshal or his deputies, rural free delivery mail carriers in the discharge of their duties as such, bonded constables in the discharge of their duties as such, conductors, railway mail clerks and express messengers in the discharge of their duties.’’
See Act No. 2013-283, Ala. Acts 2013, effective August 1, 2013. Unless otherwise noted, all citations in this opinion to § 13A-11-52, Ala.Code 1975, refer to the version of § 13A-11-52 in effect before the recent amendment.

. Whether the express or implied permission of the premises owner might be a valid defense to a charge under § 13A-T1-52 is not presented to us in Tulley’s argument that the City’s evidence was insufficient to support his conviction, and we do not address it.

. Section 13A-11-73, Ala.Code 1975, was amended in 2013 to provide as follows:
"(a) Except on land under his or her control or in his or her own abode or his or her own fixed place of business, no person shall carry a pistol in any vehicle or concealed on or about his or her person without a permit issued under Section 13A-11-75(a)(1) or recognized under Section 13A-11-85.
"(b) Except as otherwise prohibited by law, a person legally permitted to possess a pistol, but who does not possess a valid concealed weapon permit, may possess an unloaded pistol in his or her motor vehicle if the pistol is locked in a compartment or container that is in or affixed securely to the vehicle and out of reach of the driver and any passenger in the vehicle.”

. We therefore find unpersuasive the 1984 opinion of the attorney general discussed above in Part I.A. See, e.g., Ex parte McCormick, 932 So.2d 124, 133 (Ala.2005) (“ ‘ “While an opinion of the attorney general is not binding, it can constitute persuasive authority.” ’ ” (quoting Water Works & Sewer Bd. of City of Talladega v. Consolidated Publ’g, Inc., 892 So.2d 859, 866 n. 5 (Ala.2004) (additional citations omitted))).
In reaching a similar conclusion regarding Looney and Morris, the circuit court, in its order denying Tulley’s motion to dismiss, stated:
"[Tulley] argues that Alabama caselaw has repeatedly held that a person is not prohibited from carrying an unconcealed pistol if the pistol is not in a vehicle and not concealed. He cites Looney ... and Morris ... as authority. However, those cases do not state the facts ... with enough particularity to make that leap. This Court cannot determine where those defendants were arrested, whether it was on public or private property.”
(C. 74.)

. As discussed below, Tulley argued only that the Code of Alabama did not include a punishment provision; he did not address the punishment provision in City of Jacksonville Ordinance No. 0-514-10.

. Section 3486 prohibited the concealed carrying of “brass knuckles and slungshots op other weapon of like kind.”

. Indeed, throughout the proceedings below, the City and Tulley acknowledged that the *796 ordinance makes a violation of § 13A-11-52, Ala.Code 1975, an offense against’ the City. Specifically, the complaint filed in the municipal court states that the ordinance "embraces Section 13A-11-52, Code of Alabama 1975” (C. 10). Likewise, the City’s complaint in the circuit court asserted that the ordinance "incorporated” § 13A-11-52. (C. 6.) Moreover, in his materials submitted to this Court on original submission and on application for rehearing, Tulley has not disputed that the ordinance makes a violation of § 13A-11-52, Ala.Code 1975, an offense against the City. Finally, this Court's original unpublished memorandum affirming Tulley’s conviction stated that "Tulley was actually charged with violating City of Jacksonville Ordinance No. O — 514—[1]0, which adopts § 13A-11-52, Ala. Code 1975.”

. Section 11-45-9, Ala.Code 1975, was amended effective June 14, 2011.

. Section 11-45-1.1, Ala.Code 1975, was repealed by Act No. 2013-283, Ala. Acts 2013.

. This section clearly contemplated that a municipality such as the City could prosecute a violation of § 13A-11-52, Ala.Code 1975, as a breach of a municipal ordinance.

. Act No. 2013-283, Ala. Acts 2013, amend- . ed §.11-80-11, Ala.Code 1975, to remove subsections (a) and (b); the preamble to Act No. 2013-283, Ala. Acts 2013, states that § 11-80-11 was amended "to consolidate certain preemption language regarding the authority of counties and municipalities to regulate certain activity related to firearms,”

. The dissenting opinion asserts that “it appears that the circuit court mistakenly believed that the general sentencing provisions in §§ 13A-5-4, 13A-5-7, and 13A-5-12 provide a punishment for a violation of § 13A-11-52.” 199 So.3d at 810. As noted in our opinion, however, the sentence the circuit court imposed is within the range of punishment authorized by Ordinance No. 0-514-10 and § 11-45-9, Ala.Code 1975.

. Section 7 of Act No. 2013-283, Ala. Acts 2013, which became effective after Tulley's conviction and sentence, added the following provision, which is codified at § 13A-11-61.3(g)(10), Ala.Code 1975:
*803 "The adoption or enforcement by a county or municipality of ordinances which make the violation of a state firearm law a violation of an ordinance, provided that the elements of the local ordinance may not differ from the state firearm law, nor may the local ordinance impose a higher penalty than what is imposed under the state firearm law."
(Emphasis added.)